# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA TALLAHASSEE DIVISION


**ISRAEL ROSADO-PEREZ,**

      **Plaintiff,**

**vs.**                              **Case No. 4:15cv216-WS/CAS**

**DR. L. CARREO-RUIZ,**
**DR. CARLOS COLON,**
**AMY KIRKLAND,**
**DARLENE WARD,**
**and SHELBY MIXON,**

      **Defendants.**
_____/


## REPORT AND RECOMMENDATION

Defendants Colon, Kirkland, Ward, and Mixon filed a motion for summary judgment, ECF No. 65, supported by a statement of facts and several exhibits. The pro se Plaintiff was advised of his obligation to respond to the motion, ECF No. 66, and Plaintiff has filed a memorandum in response, ECF No. 71, a statement of disputed facts, ECF No. 72, and his declaration, ECF No. 73. Defendants file a reply. ECF No. 73. The motion for summary judgment is ready for a ruling.

**PRELIMINARY ISSUE**

Plaintiff's amended complaint named five Defendants.  ECF No. 30.

Service has never been carried out on Dr. L. Carreo-Ruiz.  ECF No. 36.

Plaintiff was directed to use the tools of discovery to locate that Defendant

and then file a motion "advising that a possible address has been found

and requesting that service efforts again be made on Plaintiff's behalf."

ECF No. 37 at 3; *see also* ECF No. 53 at 2.  Nothing has been filed

concerning Dr. Carreo-Ruiz.  It is therefore recommended that this

Defendant be dismissed from this action pursuant to Rule 41(b) as Plaintiff

has not prosecuted his claim against Dr. Carreo-Ruiz.[1]

**PLAINTIFF'S ALLEGATIONS**

Plaintiff's second amended complaint concerns issues with his CPAP

machine which he uses because he has obstructive sleep apnea.  ECF No.

30.  Plaintiff entered the Department of Corrections in February of 2014

with his own CPAP breathing machine.  *Id.* at 5.  As relevant to the claims

against the remaining four Defendants, Plaintiff alleged that after he was

transferred to Liberty Correctional Institution on March 5, 2014, Dr. Colon

---

[1] It is unclear whether this Defendant's name is Carreo-Ruiz, *see* ECF No. 30 at 1-2, or Carrero-Ruiz, *see* ECF No. 30 at 6.  Plaintiff used both spellings in his complaint. The summons listed the name as Carreo-Ruiz, and it was returned unexecuted with the notation that the "addressee no longer employer at Corizon."  ECF No. 36 at 2.  The different spelling, thus, appears to have had no effect on service efforts.

refused to provide him with distilled water. ECF No. 30 at 7. Plaintiff said he was without distilled water until April 3, 2014, and could not use his CPAP machine. *Id.* Plaintiff alleged that Dr. Colon also denied him CPAP supplies between September 10, 2014, and September 15, 2014. *Id.* at 8. On a third occasion, October 7, 2014, Plaintiff went to sick call and was denied distilled water (although he does not allege who denied him the water). *Id.* Plaintiff grieved the issue and Dr. Colon responded to his grievance by telling Plaintiff that it was "a sick call issue." *Id.*

Plaintiff was transferred from Liberty Correctional Institution to Wakulla Correctional Institution on November 13, 2014. ECF No. 30 at 8. Plaintiff alleged that Dr. Colon "refused to supply" him with "distilled water to use while in transit." *Id.*

While housed at Wakulla's Work Camp on January 9, 2015, Plaintiff alleged that Nurse Ward "refused to provide" him with distilled water when he went to sick call and told him "to survive the best" he could. *Id.* at 8. Plaintiff said that he was denied distilled water for 27 days (until February 5, 2015,) and could not use his CPAP. *Id.* at 9.

On May 5, 2015, Plaintiff said that an correctional officer broke the head gear on his CPAP. ECF No. 30 at 9. Plaintiff reported the issue to medical but said that Defendant Kirkland refused to help him and told him

to contact Ms. Mixon. *Id.* When Plaintiff sent a request to Defendant Mixon on May 8, 2015, she returned the request on May 18th, advising Plaintiff that new head gear had been ordered. *Id.* However, Plaintiff contends that the wrong size gear was ordered because Defendant Mixon never asked the size or type before ordering. *Id.* Plaintiff contends he was unable to use his CPAP for 22 days (until May 26, 2015). *Id.* Plaintiff complains that "they could have lent him" a CPAP machine to use during that period of time.

Then on June 17, 2015, when Plaintiff's CPAP machine stopped working, Plaintiff contacted Nurse Ward about the problem. ECF No. 30 at 10. She allegedly told Plaintiff, "Well you will have to learn how to breath without a machine for a while." *Id.* She directed Plaintiff to tell Defendant Mixon about the problem. *Id.* Plaintiff alleges that she was deliberately indifferent to his problem and should have lent him another machine, contacted Defendant Mixon herself, and/or placed him in the infirmary at night to monitor him in case of an emergency. *Id.* Plaintiff did not receive a replacement CPAP machine until July 16, 2015. *Id.*

**STANDARD OF REVIEW**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Thus, summary judgment is proper "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp., 477 U.S. at 323, 106 S. Ct. at 2553. The non-moving party must then show[2] though affidavits or other Rule 56 evidence "that there is a

---

[2] "Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " Owen v. Wille, 117 F.3d 1235, 1236 (11th Cir. 1997), *cert. denied* 522 U.S. 1126 (1998) (quoting Celotex, 477 U.S. at 324, 106 S. Ct. at 2553) (quoting Fed. R. Civ. P. 56(c), (e))). The nonmoving party need not produce evidence in a form that would be admissible as Rule 56(e) permits opposition to a summary judgment motion by any of the kinds of evidentiary materials listed in Rule 56(c). Owen, 117 F.3d at 1236; Celotex,

genuine issue for trial" or "an absence of evidence to support the nonmoving party's case." *Id.* at 325, 106 S. Ct. at 2554; Beard v. Banks, 548 U.S. 521, 529, 126 S. Ct. 2572, 2578, 165 L. Ed. 2d 697 (2006).

An issue of fact is "material" if it could affect the outcome of the case. Hickson Corp. v. Northern Crossarm Co., Inc., 357 F.3d 1256, 1259 (11th Cir. 2004) (citations omitted). Additionally, "the issue of fact must be 'genuine'" and the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986) (other citations omitted). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1243 (11th Cir. 2003) (quoting Chapman v. AI Transp., 229 F.3d 1012, 1023 (11th Cir. 2000)).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202

_____

477 U.S. at 324, 106 S. Ct. at 2553.

(1986). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson, 477 U.S. at 249, 106 S. Ct. at 2511 (noting that a "scintilla of evidence" is not enough to refer the matter to a jury). The Court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Hickson Corp., 357 F.3d at 1260 (quoting Anderson v. Liberty Lobby, 477 U.S. 242, 252, 106 S. Ct. 2505, 2505, 91 L. Ed. 2d 202 (1986)). All "justifiable inferences" must be resolved in the light most favorable to the nonmoving party, Beard, 548 U.S. at 529, 126 S. Ct. at 2578 (noting the distinction "between evidence of disputed facts and disputed matters of professional judgment."),[3] but "only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007) (quoted in Ricci v. DeStefano, 557 U.S. 557, 586, 129 S. Ct. 2658, 2677, 174 L. Ed. 2d 490 (2009)). "Where the record taken as a whole could not lead a rational trier of fact to find for

---

[3] Noting that deference must be given "to the professional judgment of prison administrators," the Court stated that "[u]nless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage." Beard, 548 U.S. at 530, 126 S. Ct. at 2578 (citing Overton v. Bazzetta, 539 U.S. 126, 132, 123 S. Ct. 2162, 2167, 156 L. Ed. 2d 162 (2003)).

the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Elec.

Indus. Co., 475 U.S. at 587, 106 S. Ct. at 1356 (other citation omitted).

**RELEVANT RULE 56(E) EVIDENCE**

Dr. Carlos Colon was employed by Corizon as the Medical Director at

Liberty Correctional Institution between August 25, 2014, and December

2015.  ECF No. 65-1 at 1-2 (Ex. A).  Dr. Colon has treated patients with

sleep apnea and is familiar with CPAP machines.  *Id.* at 2-3.  Dr. Colon

submitted an affidavit in which he denies Plaintiff's claims entirely.  *Id.*

First, Dr. Colon states that he did not refuse to provide Plaintiff with

distilled water between March and April 2014, because he "did not even

start working at the facility until August 25, 2014."  ECF No. 65-1 at 3.

Thus, Dr. Colon declares that he had no involvement with Plaintiff during

the time alleged.  *Id.*  Second, Dr. Colon "never saw" Plaintiff "at any time"

and "had no personal role in" providing him medical care.  *Id.* at 3-4.  Third,

Dr. Colon states that he "never denied" Plaintiff distilled water or any

necessary medical items.  *Id.* at 4.  Dr. Colon also advises that "CPAP

machines can operate with regular tap water, although it does cause a

mineral buildup over time."  *Id.*  However, for the brief periods of time

Plaintiff alleged "he did not have access to distilled water, he could have

easily used tap water with no problems."  *Id.*

Dr. Colon acknowledges denying one of Plaintiff's grievances and informing him "that access to distilled water was a sick call issue." ECF No. 65-1 at 4. Dr. Colon contends that Plaintiff could access sick call and a nurse would give him distilled water. *Id.* Nurses are "responsible for supplying distilled water." *Id.* Dr. Colon advises that he "had no involvement in stocking or ordering distilled water or providing it to the patients with CPAP machines." *Id.* Furthermore, Dr. Colon said that he was unaware of Liberty Correctional Institution "ever being out of distilled water." *Id.* He said that the medical department "uses sterile or distilled water to clean wounds, so there is always a supply available." *Id.* Nevertheless, if there ever was a time that none was available, "he could have used regular water just fine." *Id.* at 5.

Finally, Dr. Colon states that he did not see Plaintiff before he was transferred to Wakulla Correctional Institution, so Dr. Colon declared that he did not deny Plaintiff distilled water for the trip. ECF No. 65-1 at 5. Moreover, he explains that "there would have been no need for distilled water during the trip anyway" because a "CPAP machine is used at night when the patient is sleeping." *Id.* Plaintiff would not have been left in the transport vehicle overnight and if "they stopped at another facility on the way to Wakulla CI, there would be a medical facility and access to distilled

water." *Id.* Dr. Colon concludes by reiterating that he "had absolutely no

role in" Plaintiff's medical care and "never saw him." *Id.*[4]

Defendant Amy Kirkland, a nurse practitioner, also submitted an

affidavit which states that she worked at Wakulla Correctional Institution

from 1995 until July 2015. ECF No. 65-2 (Ex. B). Defendant Kirkland

states that she does not personally remember Plaintiff or the alleged

incident on May 5, 2015, in which Plaintiff said that she refused to assist

him when the head gear broke on his CPAP machine. *Id.* at 2. However,

she states that "if an inmate had an issue with their medical equipment, Ms.

Mixon was the appropriate person to contact because she was the

individual who ordered medical supplies." *Id.* Ms. Mixon was the person

"who managed the CPAP machines and replacement parts." *Id.*

Defendant Kirkland states that her usual practice was to have

Ms. Mixon come to the exam room when a patient had a problem with his

medical equipment." *Id.* at 2-3. Defendant Kirkland declares that she

"never sent out a patient and told them to write an Inmate Request to

---

[4] Attached to Dr. Colon's affidavit was a copy of an informal grievance Plaintiff submitted to medical in September of 2014 in which he complained that on several occasions, medical staff told him they did not have distilled water to supply him. ECF No. 65-1 at 7. Plaintiff asked if they could make a "better effort" to keep distilled water in stock. *Id.* The response (which does not appear to have been signed by Dr. Colon) "denied" Plaintiff's grievance and said only, "This is a sick call issue." *Id.* Other grievances were also presented, none of which contain Dr. Colon's signature or stamp.

Ms. Mixon or otherwise gave any orders to contact her." *Id.* at 3. In the event Ms. Mixon had the day off, Defendant Kirkland says that she would have put the patient on the call out list for her when she returned." *Id.*

She also states that she was unable to order head gear for a CPAP machine because she "was not authorized to order any medical supplies." ECF No. 65-2 at 3. She never ordered any medical supplies or replacement parts at the prison. *Id.* Defendant Kirkland asserts that she did not ignore Plaintiff's medical needs but, instead, "routed him to the person who could provide the requested items." *Id.*

Defendant Darlene Ward is a licensed practical nurse who "worked at Wakulla Correctional Institution from 1997 to 2001 and again from 2005 until February 13, 2016." ECF No. 65-3 at 1-2 (Ex. C). During the relevant time frame of Plaintiff's complaint, he was "housed at the Wakulla Work Camp" which is "next door" to the main unit at Wakulla C.I. *Id.* Defendant Ward explains in her affidavit that the nurses took distilled water to the Work Camp for the CPAP machines. *Id.* at 2. Inmates were responsible for going "to the medical department at the Work Camp with the reservoir" from the CPAP machine to get the distilled water. *Id.* Defendant Ward states that distilled water "was always available" but Plaintiff did "not always come with his reservoir to get it." *Id.* at 3. She went to the Work

Camp on "Tuesday mornings to do labs and injections, and TB testing" and

on Thursdays she went "with the clinician to do the doctor's callout." *Id.*

 Defendant Ward denies that she ever saw Plaintiff in sick call

because "Corizon's policy did not allow LPNs to do sick call." ECF No. 65-

3 at 3. Instead, only registered nurses saw patients in sick call. *Id.* She

also clarifies that registered nurses went to the "Work Camp every

afternoon Monday through Friday to do sick calls." *Id.* Plaintiff "could have

received water and let any of the nurses know about his CPAP problems at

that time." *Id.*

 Defendant Ward says that Plaintiff told her "once that his CPAP was

not working and [she] told him [she] would let Shelby Mixon know." ECF

No. 65-3 at 3. She explains that "Ms. Mixon was the person who ordered

the medical equipment" and she did not have authority to order Plaintiff a

new CPAP. *Id.* at 3-4. Defendant Ward expressly denies ever telling

Plaintiff that "he would just have to learn how to breathe without a

machine." *Id.* at 3. She states that after Plaintiff's new CPAP machine was

ordered, she took it to Plaintiff at the Work Camp. *Id.* at 3-4.

 She further explains that the "medical department did not keep extra

CPAP machines on hand because they are expensive and each machine is

sized for each patient." ECF No. 65-3 at 3. She also states that she had

no authority to place Plaintiff "in the infirmary for observation while he was without his CPAP machine." *Id.* at 4. "Only the doctor can decide to place a patient in the infirmary." *Id.* Defendant Ward says that she never disregarded Plaintiff's medical needs but, instead, did everything she could to provide him medical care. *Id.*

Defendant Shelby Mixon also submitted her own affidavit. ECF No. 65-4 (Ex. D). She works as the Administrative Assistant to the Health Services Administrator ('HSA') at Wakulla Correctional Institution. *Id.* at 1. She is not the Medical Director, nor is she a medical provider. *Id.* at 2. Her duties include "ordering medical supplies, including CPAP machines and parts, after they have been approved." *Id.* at 3.

She explains that "Inmate Requests for medical items are usually received and answered by nurses." *Id.* Once a nurse receives such a request, the nurse "instructs the patient to submit a sick call request so the nurse can determine the necessity of the item requested." *Id.* After need for supplies or equipment is confirmed, the nurse lets Defendant Mixon "know what to order." *Id.* at 3. She states that she "cannot order any supplies unless they have been approved first." *Id.*

On May 8, 2015, Plaintiff wrote an Inmate Request stating that his "CPAP machine headgear was broken and he needed a new one." ECF

No. 65-4 at 3 (citing Ex. A attachment "MR-006," ECF No. 65-1 at 12).

Defendant Mixon responded to that request on May 18, 2015, and told

Plaintiff that "new head gear [had] been ordered" and to "watch for callout."

ECF No. 65-1 at 12.  Defendant Mixon states that she could not have

loaned Plaintiff a "replacement CPAP machine while his headgear was

broken" because "CPAP machines and supplies are not kept in stock."

ECF No. 65-4.  She clarifies that CPAP machines "are only ordered when

needed, and there are no extra machines to loan out."  *Id.*  She also

explains that after a machine is ordered, they "have to wait for the order to

be filled and shipped by the manufacturer."  *Id.* at 3-4.  Such "processing

delays are out of [her] control."  *Id.* at 4.  Defendant Mixon also said that if

an incorrect size was initially ordered for Plaintiff, "it was a mistake and not

an intentional act to deprive him the use of his CPAP machine."  *Id.*

On June 17, 2015, Plaintiff wrote her another Inmate Request stating

that his CPAP machine was not working.  ECF No. 65-4 at 4.  Defendant

Mixon states that she did not receive that request.  Instead, Nurse Tanner

answered Plaintiff's request on June 26, 2015, even though it was

addressed to Defendant Mixon, and told Plaintiff to attend "sick call and

bring his machine with him."  *Id.* (citing Ex. A attachment "MR-007," ECF

No. 65-1 at 13).  Prior to Plaintiff receiving that response, Plaintiff wrote

another Inmate Request to Ms. Mixon on June 25, 2015, seeking "to check status on [his] initial request" to replace his broken CPAP machine.  Ex. A attachment "MR-008," ECF No. 65-1 at 14.  Again, Nurse Tanner responded and told Plaintiff to bring his machine with him when he went to sick call.  *Id.*  She also said that after sick call, he would "be scheduled to speak with Ms. Mixon."  *Id.*

Defendant Mixon said that Plaintiff did not follow the nurse's instructions but, instead, wrote additional requests addressed to her on June 29, 2015, and July 8, 2015.  ECF No. 65-4 at 4 (citing Ex. A attachments "MR-009," ECF No. 65-1 at 15, and "MR-010," ECF No. 65-1 at 16).  Both of those requests were addressed by nurses.  Plaintiff "finally submitted his sick call request on July 14, 2015."  ECF No. 65-4 at 4-5; *see* Ex. A attachment "MR-011," ECF No. 65-1 at 17.  "He received his new CPAP machine on July 16, 2015."  *Id.* at 5.  Defendant Mixon states that delay in Plaintiff receiving a new CPAP machine "was caused entirely by his failure to follow instructions."  *Id.*  She advises that he was "told multiple times to request a sick call appointment so his request could be" evaluated, approved, and ultimately sent to Defendant Mixon to order.  *Id.*  Yet, Plaintiff "waited weeks before requesting the necessary sick call appointment."  *Id.*

Plaintiff submitted his own affidavit as evidence. ECF No. 70. He states that his original treating physician, Dr. Ivan Ackerman, directed him "to use only distilled water with [his] CPAP machine." *Id.* at 1. Plaintiff contends that Wakulla C.I.'s Work Camp was "not staffed by full-time medical personnel and distilled water [was] not available 'on request'" as claimed by Dr. Colon. *Id.* Plaintiff also disputes that distilled "water was not always available" for his CPAP. *Id.* at 2.

Plaintiff also says that submitting a sick call request results in a five dollar co-pay. ECF No. 70 at 2. He argues that if he were required to sign up for sick call every time he needed distilled water, it "would subject [him] to unnecessary and exorbitant costs to obtain distilled water." *Id.* He advises that while at the work camp, he was originally given "three 2-day bottles of water" which were "reduced to two, and then finally to one 2-day supply." *Id.* Thus, he contends that requesting sick call every 2 days to obtain distilled water would amount to "a yearly cost of over $900.00 just to receive distilled water." *Id.* Because of that cost, Plaintiff says he used inmate request forms when he needed water. *Id.* Plaintiff disputes that obtaining distilled water "was a simple matter of 'going to medical' and getting it." ECF No. 70 at 2.

Plaintiff maintains that Defendant Kirkland personally directed him "to write to Ms. Mixon using inmate requests regarding [his] broken headgear and other CPAP supplies."  ECF No. 70 at 3.  He also notes that Defendant Ward acknowledges that Ms. Mixon was the correct person to order supplies.  *Id.*  Thus, Plaintiff contends that Defendant Mixon is attempting "to disclaim responsibility for supplying" him with the needed medical items. *Id.*

Plaintiff asserts that no pharmacy window was available at the Work Camp which would have enabled him to more easily obtain distilled water refills.  ECF No. 70 at 3.  He says he "faced a constant battle for access to medical personnel," and claims procedures "were intentionally designed to frustrate" his attempts for medical care.  *Id.*  Plaintiff complains that going to medical required permission from dorm officers who were often unwilling to write him a pass.  *Id.* at 4.  He says that officers did not want to write passes to go to medical unless a medical emergency was declared.  *Id.* Plaintiff complains that "distilled water should have been made available" but was not.  *Id.*

Plaintiff also contends that Defendant Ward did tell him that he "would 'just need to learn to breathe without' [his] CPAP machine."  ECF No. 70 at 4.  He argues that is evidence of her deliberate indifference.  *Id.*

He contends that she should have informed "her medical superiors of [his] potentially life-threatening situation" and by failing to do so, she demonstrated deliberate indifference.  *Id.*  Finally, Plaintiff argues that submitting an Inmate Request form "is a legitimate means to inform the medical department of a medical need or issue."  *Id.* at 5.  He argues that when Defendants received his request forms, they should have put his name on the call-out list or placed him on sick call to resolve the problem rather than place the blame on him.  *Id.*

## ANALYSIS

Deliberate indifference to the serious medical needs of sentenced prisoners violates the Eighth Amendment's prohibition of cruel and unusual punishment.  Estelle v. Gamble, 429 U.S. 97, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976).  "A serious medical need is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003) (quotations omitted) (quoted in Bingham v. Thomas, 654 F.3d 1171, 1176 (11th Cir. 2011)).  "In either of these situations, the medical need must be 'one that, if left unattended, 'pos[es] a substantial risk of serious harm.'"  Farrow, 320 F.3d

at 1243 (citation omitted); *see also* <u>Mann v. Taser Intern., Inc.</u>, 588 F.3d 1291, 1307 (11th Cir. 2009).

Deliberate indifference requires more than negligence,[5] but it is unnecessary to show a defendant intended to cause harm.  <u>Farmer v. Brennan</u>, 511 U.S. 825, 835, 114 S. Ct. 1970, 1978, 128 L. Ed. 2d 811 (1994).  Deliberate indifference requires a plaintiff to show that a defendant was subjectively reckless and consciously disregarded a substantial risk of serious harm.  <u>Wilson v. Seiter</u>, 501 U.S. 294, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991) (explained in <u>Farmer</u>, 511 U.S. at 838-40, 114 S. Ct. at 1979-80).

Combining the standards from <u>Farmer</u> and <u>Estelle</u>, the Eleventh Circuit has clarified that, ultimately, there are four requirements to bringing an Eighth Amendment claim for the denial of medical care: "an objectively serious need, an objectively insufficient response to that need, subjective awareness of facts signaling the need, and an actual inference of required action from those facts."  <u>Taylor v. Adams</u>, 221 F.3d 1254 (11th Cir. 2000), *cert. denied*, 531 U.S. 1077 (2001); <u>Farrow</u>, 320 F.3d at 1243.  Put another

_____

[5] "Conduct that is more than mere negligence includes: (1) grossly inadequate care; (2) a decision to take an easier but less efficacious course of treatment; and (3) medical care that is so cursory as to amount to no treatment at all."  <u>Bingham</u>, 654 F.3d at 1176 (citing <u>Brown v. Johnson</u>, 387 F.3d 1344, 1451 (11th Cir. 2004)).

way, to show a defendant acted with deliberate indifference, "a prisoner

must show the prison official's: '(1) subjective knowledge of a risk of

serious harm; (2) disregard of that risk; and (3) by conduct that is more

than mere negligence.'" Bingham, 654 F.3d at 1176 (quoting Brown v.

Johnson, 387 F.3d 1344, 1351 (11th Cir. 2004)); McElligott v. Foley, 182

F.3d 1248, 1255 (11th Cir. 1999).

　　　"However, not 'every claim by a prisoner that he has not received

adequate medical treatment states a violation of the Eighth Amendment.' "

McElligott v. Foley, 182 F.3d 1248, 1254 (11th Cir. 1999) (citation omitted)

(quoted in Farrow, 320 F.3d at 1243).  For example, medical malpractice

does not constitute deliberate indifference.  Estelle, 429 U.S. at 106, 97 S.

Ct. at 292.  "Nor does a simple difference in medical opinion between the

prison's medical staff and the inmate as to the latter's diagnosis or course

of treatment support a claim of cruel and unusual punishment."  Harris v.

Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991) (citing Waldrop v. Evans,

871 F.2d 1030, 1033 (11th Cir. 1989)).  "A 'complaint that a physician has

been negligent in diagnosing or treating a medical condition does not state

a valid claim of medical mistreatment under the Eighth Amendment.'"

Estelle, 429 U.S. at 106, 97 S.Ct. at 292 (quoted in Bingham, 654 F.3d at

1176).  For example, the prisoner in Estelle received treatment for his back

injury, but complained that more should have been done in the way of

diagnosis.  The Court rejected this as a basis for liability:

> But the question whether an X-ray--or additional diagnostic
> techniques or forms of treatment--is indicated is a classic
> example of a matter for medical judgment.  A medical decision
> not to order an X-ray, or like measures, does not represent
> cruel and unusual punishment.

429 U.S. at 107, 97 S. Ct. at 293.  Put simply, an "official acts with

deliberate indifference when he or she knows that an inmate is in serious

need of medical care, but he fails or refuses to obtain medical treatment for

the inmate."  McElligott, 182 F.3d at 1255 (citing Lancaster v. Monroe

County, Ala., 116 F.3d 1419, 1425 (11th Cir. 1997)); Mandel v. Doe, 888

F.2d 783, 788 (11th Cir. 1989).

Here, "Defendants acknowledge that sleep apnea can be an

objectively serious medical need."  ECF No. 65 at 16.  The issue is whether

Defendants were deliberately indifferent to that need.

First, the undisputed evidence reveals that Dr. Colon did not treat

Plaintiff and was not involved in providing distilled water to prisoners at

Liberty Correctional Institution.  Dr. Colon's only interaction with Plaintiff

was in responding to a grievance and directing Plaintiff to go to sick call to

discuss his need for distilled water.  That is not unconstitutional.  Thus,

because Plaintiff has provided no evidence to show that Dr. Colon was

deliberately indifferent to his needs, summary judgment should be granted in Dr. Colon's favor.

Second, the basis for Plaintiff's claim against Defendant Kirkland also rests on the fact that she directed him elsewhere.  Defendant Kirkland denies that she told Plaintiff to contact Defendant Mixon concerning his broken headgear.  Plaintiff says that she did.  Regardless of that dispute, it is not material to resolution of the claim against Defendant Kirkland.  The undisputed evidence is that Defendant Mixon ordered supplies and not Defendant Kirkland, and directing him to contact the proper person to place his order was not unconstitutional.  Defendant Mixon ordered new headgear for Plaintiff and it was provided to him.  A mistake in ordering an incorrect size is not an actionable claim as it amounts to no more than negligence.  Moreover, Plaintiff suffered no harm in the twenty-two days he was without the headgear.  Summary judgment should be granted in favor of Defendants Kirkland and Mixon.

Third, Plaintiff's claim against Defendant Ward is based on her alleged failure to provide him with distilled water on January 9, 2015, *see* ECF No. 30 at 8, and her instruction on June 17, 2015, to tell Defendant Mixon that his CPAP stopped working, *id.* at 10.  Dr. Colon testified in his affidavit that Plaintiff could have continued to use his CPAP during any of

the brief periods of time he was without distilled water by using regular water. Such temporary use would not cause Plaintiff harm nor cause significant harm to the machine. Plaintiff's disagreement with that opinion does not create a genuine dispute of material fact.

Additionally, Defendant Ward testified that medical staff are available every day at the Work Camp and inmates can go to the medical department with their reservoir to get water. There is no evidence that Defendant Ward ever had water that she refused to provide to Plaintiff. Indeed, Defendant Ward's evidence is that she went to the Work Camp only two days a week. Plaintiff has not disputed that evidence, nor has he shown that he could not have continued to use his machine even if there was an unavailable supply on one day. The fact that Plaintiff may have had to submit a co-pay occasionally does not provide a basis for finding any Defendant was deliberately indifferent to his needs.

Furthermore, there is no evidence that Defendant Ward refused to assist Plaintiff when his machine "stopped working" on June 17, 2015. She did not have authority to order a new machine without direction from medical staff, and no machine was available to provide to Plaintiff as a "loaner." Even accepting Plaintiff's testimony that she told him to "learn how to breath without a machine for awhile," that is not sufficient to find that

she violated his rights.  A rude or insensitive comment is not

unconstitutional although it may be unprofessional.  The undisputed

evidence is that Defendant Ward told Defendant Mixon that Plaintiff's

machine was broken and a new one was ordered for him.

Moreover, the evidence reveals that Plaintiff improperly submitted

requests to Defendant Mixon rather than submit sick call requests as

instructed.  His requests were responded to by Nurse Tanner.  He finally

submitted a sick call request on July 14, 2015, and after doing so, he

received a new CPAP machine on July 16, 2015.  Even viewing this

evidence in the light most favorable to Plaintiff, it is apparent that the delay

in receiving another CPAP was due to Plaintiff's own actions, not as a

result of any failure by Defendant Ward.  Plaintiff's desire to avoid going to

sick call does not mean that Defendants had to operate outside of

established procedures.  Because there is no evidence that Defendant

Ward was deliberately indifferent to Plaintiff's medical needs, summary

judgment should be granted in her favor as well.

**RECOMMENDED**

It is respectfully **RECOMMENDED** that Defendants' motion for

summary judgment, ECF No. 65, be **GRANTED** on all claims.  It is further

**RECOMMENDED** that the claim against Defendant Carreo-Ruiz be

**DISMISSED** for failure to prosecute.

**IN CHAMBERS** at Tallahassee, Florida, on August 7, 2017.


 S/     Charles A. Stampelos
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**


**NOTICE TO THE PARTIES**

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations.  Fed. R. Civ. P. 72(b)(2).  A copy of the objections shall be served upon all other parties.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Fed. R. Civ. P. 72(b)(2).  Any different deadline that may appear on the electronic docket is for the Co urt's internal use only and does not control.  If a party fails to object to the Magistrate Judge's findings or recommendations as to any particular claim or issue contained in this Report and Recommendation, that party waives the right to challenge on appeal the District Court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**